1  Rory Zamansky (*pro hac vice*)
   **ZELLE HOFMANN VOELBEL & MASON LLP**
2  500 Washington Avenue South, Suite 4000
   Minneapolis, MN 55415
3  Telephone:  (612) 339-2020
   Facsimile:   (612) 336-9100
4  rzamansky@zelle.com

5  Craig C. Corbitt (SBN 83251)
   **ZELLE HOFMANN VOELBEL & MASON LLP**
6  44 Montgomery Street, Suite 3400
   San Francisco, California  94104
7  Telephone:  (415) 693-0700
   Facsimile:   (415) 693-0770
8  ccorbitt@zelle.com

9  *Counsel for Defendant COREPOWER YOGA LLC*

10           **UNITED STATES DISTRICT COURT**

11      **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  GILLIAN WALKER, an individual, on behalf of herself and all others similarly situated, all 13  other aggrieved employees, and on behalf of the general public, 14 | Case No. 3:12-cv-00004 WQH (DHB) (Removal of San Diego County Superior Court, North County, Case No.: 37-2011-00101074-CU-OE-CTL) |
| 15                    Plaintiff, | Assigned to: Hon. William Q. Hayes, Judge Ctrm.: 4, |
| 16  v. | Assigned to: Hon. David H. Bartick, Mag. Judge Ctrm.: H |
| 17  COREPOWER YOGA LLC, a Colorado Corporation, and DOES 1 through 50, 18  inclusive, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| 19                    Defendant. | Date:        February 25, 2013 Time:        11:00 a.m. 20  Location:  Courtroom 14B |

21

22

23

24

25

26

27

28

---

## I.  INTRODUCTION

Plaintiff Gillian Walker's motion to remand is completely without merit.  These issues have already been briefed and Plaintiff's new arguments do not compel a different result.  *See* Defendant CorePower Yoga LLC ("CorePower Response to Order to Show Cause dated February 10, 2012, ECF Doc. Number 9) ("Defendant's Response")).  Indeed, Plaintiff waited <u>more than a year</u> from the date CorePower removed the case to federal court to bring this motion to remand.

At the outset, it is important to note that Plaintiff concedes there is complete diversity of parties (*see id*. at 2-5), so the <u>only issue</u> is whether 28 U.S.C. § 1332's $75,000 amount in controversy requirement is satisfied.  While CorePower denies any liability, and disputes the existence of any damages in this case, the claims asserted in Plaintiff's Complaint put into controversy an amount far greater than $75,000.  Indeed, as established below, there is no doubt the $75,000 amount in controversy requirement is satisfied.  Plaintiff's attempt to parse what should, or should not be, included in the amount in controversy is a frivolous exercise in semantics.  Plaintiff completely ignores the common interest exception that exists in the California Labor Code Private Attorneys General Act of 2004 ("PAGA") class actions, which holds that because all purported class members have a common interest in their PAGA claims that all of their collective alleged damages under PAGA are supposed to be aggregated in determining whether the $75,000 amount in controversy has been met.  Therefore, even if we are to assume that all of the Plaintiff's calculations are correct, and completely exclude attorneys' fees from this calculation, the $75,000 amount in controversy is still met.  However, Plaintiff is also wrong on the attorneys' fees issue.  The law is clear that when members of a purported class share a common interest the current and future attorneys' fees incurred on their behalf are to be included in determining the amount in controversy and are not supposed to be attributed pro rata to each class member.

Alternatively, jurisdiction is also proper under the Class Action Fairness Act of 2005 ("CAFA") because the amount in controversy in this litigation exceeds $5,000,000.  Indeed, nowhere in Plaintiff's motion to remand does Plaintiff assert that the amount in controversy is less than $5 million.  Plaintiff's motion should therefore be denied.

1

1

## II.  ARGUMENT

2

### A.      The Amount in Controversy Exceeds $75,000.

3       Where the parties in an action are citizens of different states, a district court "shall have

4   original jurisdiction ... where the matter in controversy exceeds the sum or value of $75,000, exclusive

5   of interest and costs[.]"  28 U.S.C. § 1332(a).  Where, as here, Plaintiff's Complaint failed to seek any

6   specific amount of damages, a defendant need only show that the amount in controversy more likely

7   than not exceeds the jurisdictional minimum of $75,000.  The Court must consider all recoverable

8   damages, including general and special damages (excluding costs and interest), attorneys' fees if

9   recoverable by statute or contract, and punitive damages.  *See, e.g., Conrad Assocs. v. Hartford*

10  *Accident & Indem. Co.*, 994 F.Supp. 1196, 1198 (N.D. Cal.1998).  Moreover, "[i]n measuring the

11  amount in controversy, a court must assume that the allegations of the complaint are true and that a

12  jury will return a verdict for the plaintiff on all claims made in the complaint."  *Korn v. Polo Ralph*

13  *Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (quoting *Kenneth Rothschild Trust v.*

14  *Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)).

15      Plaintiff spends considerable energy laying out a variety of confusing calculations and

16  alternative totals in footnotes throughout her brief.  CorePower does not endorse, or attempt to

17  recreate, Plaintiff's math here.  Indeed, doing so is completely unnecessary as the Plaintiff is entirely

18  incorrect on the law.  Once the claims are properly aggregated, as is mandated in a PAGA action, the

19  amount in controversy clearly exceeds $75,000 even if the court adopts Plaintiff's proposed alternative

20  calculations and completely excludes attorneys' fees.

21      Plaintiff also appears to suggest that CorePower's estimates of the amount that Plaintiff has put

22  into controversy implies that these amounts are proper or in some way reasonable.  *See* P's Mot. at n.

23  5. Indeed they are not.  CorePower has merely described the amount of money that Plaintiff—through

24  her baseless allegations—has put into controversy in this litigation.  CorePower reserves all of its

25  rights to contest Plaintiff's damage theories and has not made—and does not make—any concessions

26  as to damages.  Plaintiff's attempts to characterize CorePower's calculations as anything more than a

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND –
Case No. 3:12-cv-00004 WQH (DHB)

1    description of the amount in controversy for jurisdiction purposes are improper and should be ignored.

2

3        **B.      Plaintiff's Attempt to Discount PAGA Penalties To Escape Federal**

4                  **Jurisdiction is Improper.**

5            Plaintiff asserts that because 75% of the penalties recovered under PAGA go to the Labor and

6    Workforce Development Agency ("LWDA"), that only the remaining 25% of these penalties

7    constitutes an amount in controversy.  *See* P's Mot. at 5.  This statement represents a fundamental

8    misunderstanding of PAGA and fails in two critical aspects.  Because a PAGA action must be brought

9    as a representative action—or not at all— the correct rule is that "the amount at stake in a PAGA

10   claim is predicated on the total amount of the penalties that can be sought by the aggrieved employees

11   as the proxy of the LWDA."  *Thomas v. Aetna Health of Cal., Inc*., No. 1:10-CV-01906-AWI-SKO,

12   2011 WL 2173715, at *19 (E.D. Cal. June 2, 2011).  Under *Thomas*, two key principles emerge: (1) all

13   of the aggrieved employees' PAGA claims put into issue by the representative suit are aggregated in

14   the calculation of the amount in controversy[1] and (2) the amounts ultimately remitted to the LWDA

15   are not excluded.[2]  Indeed, as demonstrated below, the amount in controversy is calculated based upon

16   the amount put into controversy by the complaint, regardless of how the recovery is divided.  Even if

17   this Court were to accept Plaintiff's revised estimate of the total value of her individually asserted

18   PAGA claim of $22,550 (P's Mot. at 5), the total amount in controversy represented by the PAGA

19   action of approximately 500 potential class members would be **$11,250,000**.  Moreover, even if the

20   Court reduces the PAGA penalty amount by the 75% remitted to the LWDA (which CorePower

21

22

23

24   1        This is also called the "common and undivided interest exception" to the non-aggregation rule
     relied on by the Plaintiff.  *Thomas*, 2011 WL 2173715, at *13-14.

25   2        The *Thomas* court aggregated the penalties due to each potentially aggrieved employee in
     determining whether the $75,000 amount in controversy was met on the claims on the named plaintiff.
26    *See id*. at *20 ("assuming that every employee suffered that particular violation in at least two pay
     periods during the relevant PAGA period, a $100 penalty for the initial violation would be assessed for
27   each aggrieved employee in the first pay period (100 x 1,626 = $162,600) and a $200 penalty in the
     subsequent pay period ($200 x 1,626 = $325,200").

28
                                                    3

1    asserts is contrary the weight of the case law), the new total is **$2,818,750—far greater than the**

2    **requisite amount of $75,000.**[3]

3            The single case Plaintiff cites that is on point, *Hernandez v. Towne Park, LTD*, expressly

4    acknowledges there is a "split in authority" on whether to include the amount remitted to the LWDA

5    in the calculation of total PAGA penalties for the amount of controversy requirement.  No. CV 12-

6    02972 MMM (JCG), 2012 WL 2373372, at *16 (C.D. Cal. June 22, 2012).  But *Hernandez* does <u>not</u>

7    say that the PAGA penalties asserted by the individually named plaintiff should be reduced by 75%.

8    Rather, the court concludes "that only 25% of the potential recovery <u>on the representative action</u> can

9    be included in calculating the amount in controversy on the PAGA claim."  *Id.* (emphasis added).

10   Critically, *Hernandez* does not challenge *Thomas's* holding that the remaining PAGA Penalties

11   claimed by the allegedly aggrieved employees should be aggregated, and, in fact, assumed the validity

12   of *Thomas's* aggregation approach.  According to the *Hernandez* court, "[a]s the *Pulera* court noted,

13   the aggregation of employees' individual rights does not compel their aggregation with the rights of

14   the state agency[.]"  *Id.*  The *Pulera* case is consistent with *Hernandez* in that it holds that the 75%

15   remitted to the LWDA should not be included in the amount in controversy, but it did not explicitly

16   hold that the remaining PAGA penalties attributable to each individual claimant should not be

17   aggregated.  *See generally Pulera v. F&B, Inc*, No. 2:08-cv-00275-MCE-DAD, 2008 WL 3863489

18   (E.D. Cal. Aug. 19, 2008).

19           Under *Hernandez* and *Pulera*, the amount in controversy in this action is over $2.8 million.  In

20   this litigation, there are approximately 500 potentially aggrieved employees and a <u>minimum</u> of

21   $5,637.50 per employee, under Plaintiff's own calculations, in alleged non-LWDA PAGA Penalties,

22   representing, at a <u>minimum</u>, $2,818,750 in controversy.

23

24

---

25   3       We get this same total by taking Plaintiff's further calculation of $5,637.50 in non-LWDA
     PAGA Penalties and multiplying it by 500 allegedly aggrieved employees.  Plaintiff brought this on
26   herself by bringing her action under Labor Code Section 2699. *See, e.g., Thomas*, 2011 WL 2173715,
     at *17 ("Here, the aggrieved employees are not united in a representative suit merely for convenience
27   as Section 2699 requires that PAGA actions be brought in a representative form on behalf of all
     aggrieved employees"); *compare* Complaint at ¶73.

28
                                                    4

1    The other cases cited by Plaintiff do not compel a different result. *Smith v. Brinker*

2    *International*, No. C 10–0213 VRW, 2010 WL 1838726 (N.D. Cal. May 5, 2010), an unreported case,

3    applies the 25% remittance rule and does not aggregate the employees' PAGA claims, but it fails to

4    discuss the reasons for doing so and is not helpful to the Court here.  In *Lopez v. Source Interlink Cos.*

5    *Inc.*, the Eastern District of California did apply the 25% rule, but it <u>aggregated</u> the PAGA claims of

6    all the allegedly aggrieved employees, albeit in the context of calculating whether the $5,000,000

7    amount in controversy under CAFA was met.  No. 2:12-CV-00003-JAM-CKD, 2012 WL 1131543, at

8    *3 (E.D. Cal. Mar. 29, 2012), (123 Drivers x $100 for first violation x 7 causes of action = $86,000).

9    Therefore, the case does not support Plaintiff's argument concerning the non-aggregation of the

10   employees' PAGA claims.  For clarity, here is the correct rule:

11       Like a typical shareholders' derivative suit where the jurisdictional amount in
         controversy is predicated on the damages sustained by the corporation—as opposed
12       to the named individual shareholder—the amount at stake in a PAGA claim is
         predicated on the *total amount of the penalties* that can be sought by the aggrieved
13       employees as the proxy of the LWDA.

14   *Thomas*, 2011 WL 2173715, at *19.[4]  Thus, even without considering attorneys' fees, and even after

15   deducting the amount that may be remitted to the LWDA, the PAGA penalties in controversy far

16   exceed $75,000.

17       **C.      Plaintiff's Attorneys' Fees Will Be Far in Excess of $50,000.**

18       While CorePower disputes any liability or damages, various provisions of the California Labor

19   code allow for the recovery of attorneys' fees.  Indeed, Plaintiff's Complaint seeks recovery of

20   attorneys' fees and costs under those various statutory provisions.  Black letter law is clear: the

21   amount in controversy includes the amount of damages in dispute as well as attorneys' fees, if

22   authorized by statute or contract.  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

23       Plaintiff makes two erroneous arguments regarding attorneys' fees:

24   _____

25   4       This conclusion is further buttressed by *Urbino v. Orkin Services of California, Inc.*, No. 2:11-
     cv-06456, 2011 WL 4595249, at *9 (C.D. Cal. Oct. 5, 2011), which held that <u>even in an individual</u>
26   <u>action</u> (*i.e.*, where the PAGA claims were brought by several employees, but not as a class action) that
     the employees' PAGA claims should be aggregated for the purposes of establishing the amount in
27   controversy.  The *Urbino* court stated, on a related point, that "[t]he fact that the aggrieved employees
     receive 25 percent of the total civil penalties while the LWDA receives 75 percent does not render the
28   individual claims in a PAGA action separate and distinct."  *Id*. at *8.

1        *First*, Plaintiff asserts that the only fees properly included in the amount in controversy

2   calculation are those that were "incurred up to the date of removal."  P's Mot. at 6.  However, the

3   *Pulera* decision—a case relied on by Plaintiff for PAGA argument—states that the better reasoned

4   position is that "[w]hile the amount in controversy is determined at the time an action commences,

5   where attorney's fees are recoverable by statute, this determination includes a reasonable estimate of

6   the attorney's fees <u>likely to be incurred</u>."  *Pulera*, 2008 WL 3863489, at *4, *citing Brady v. Mercedes-*

7   *Benz*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (emphasis added).  The *Pulera* court noted that

8   some other jurisdictions had "disagreed with the inclusion of future attorneys fees," but found their

9   arguments "unpersuasive."  *Id*.  The court held  that "[w]hile the Ninth Circuit has not yet ruled on the

10  issue, the <u>preponderance of courts</u> in this Circuit have agreed with the *Brady* approach."  *Id*. (emphasis

11  added), *citing Tompkins v. Basic Research LL*, No. CIV S-08-244 LKK/DAD, 2008 WL 1808316, at

12  *4 (E.D.Cal. April 22, 2008); *Celestino v. Renal Advantage Inc.*, No. C 06-07788 JSW, 2007 WL

13  1223699, at *4 (N.D. Cal. April 24, 2007); and *Johnson v. Am. Online, Inc.*, 280 F.Supp.2d 1018,

14  1025 (N.D. Cal. 2003).  Therefore, this Court should include not only the attorneys' fees incurred up

15  to the date of removal, but those likely to be incurred throughout this litigation.

16       Moreover, the cases cited by Plaintiff for the proposition that only attorneys' fees incurred up

17  to the date of removal should be considered are based on the premise that attorneys' fees <u>after the date</u>

18  <u>of removal are speculative</u>.  In this case, Plaintiff's attorneys' fees after removal (to the present date)

19  are not speculative. CorePower removed this case on December 2, 2011—more than one year ago.  A

20  reasonable proxy for what Plaintiff is likely to seek should she prevail on her claim is what CorePower

21  has paid to its own attorneys.  To date, CorePower has paid more than $50,000 in attorneys' fees to its

22  own counsel.  Declaration of Trevor Tice dated February 11, 2013 at ¶ 4.

23       *Second*, Plaintiff incorrectly argues that the attorneys' fees must be "allocated to all members

24  of the class and aggrieved employees."  P's Mot. at 7.  Plaintiff only cites two Ninth Circuit case on

25  this issue—neither of which supports Plaintiff's position here.  The first case, *Gibson v. Chrysler*

26  *Corp.*, 261 F.3d 927, 944 (9th Cir. 2001), actually supports CorePower's position.  In *Gibson*, the

27  Court held that attorneys' fees could not be aggregated to demonstrate the amount in controversy in a

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND –
Case No. 3:12-cv-00004 WQH (DHB)

1    class case <u>unless</u> "two or more plaintiffs unite to enforce a single title or right in which they have a

2    common and undivided interest." *Id*. at 943.  Unlike in *Gibson*, in this case, there is no question that

3    there is a common interest here under PAGA, discussed above, not a divided one.  Because the

4    common interest absent in *Gibson* is present in this case, attorneys' fees must be aggregated for

5    purposes of determining the amount in controversy.  The other Ninth Circuit Case cited by Plaintiff is

6    *Goldberg v. PCP International,* 678 F.2d 1365, 1367 (9th Cir. 1982), which was decided more than 30

7    years ago.  The *Goldberg* court ignores the common interest exception and is therefore inapposite.

8            The other cases cited by Plaintiff are also unavailing.  For example, *Morrison v. Allstate*

9    *Indem. Co.*, did not announce a general non-aggregation of fees rule, but held, rather, that "the rights

10   of the class members to recover attorney's fees <u>under Fla. Stat. § 627.428</u> are separate and distinct."

11   228 F.3d 1255, 1268 (11th Cir. 2000) (emphasis added).  This case, however, is not brought under any

12   Florida statute.  The final two cases cited by the Plaintiff, *Kessler v. Nat'l Enterprises, Inc.* and

13   *Lauchheimer v. Gulf Oil*, are also distinguishable because the claimants in those cases did not share a

14   common an undivided interest.  *See Kessler,* 347 F.3d 1076, 1079 (8th Cir. 2003) ("In this case, each

15   class member seeks to enforce rights obtained through an individual contract"); *Lauchheimer*, 6

16   F.Supp.2d 339, 347 (D.N.J. 1998) ("The case at bar does not involve any such common or undivided

17   interest").  Indeed, Plaintiff <u>fails to cite a single case</u> where claims for attorneys' fees made by class

18   claimants under PAGA have been allocated pro rata in determining the amount in controversy.

19   Indeed, such holdings would fly in the face of the purpose of the statute.

20           Therefore, once attorneys' fees of $50,000 are properly included, Plaintiff's alleged individual

21   claims exceed $75,000 even if their PAGA claims are not aggregated ($46,175.50 (P's Mot. at 4) +

22   $50,000 in attorneys' fees = $96,465 at a minimum using Plaintiff's own revised calculations).

23           **D.      Federal Court Jurisdiction Is Also Proper Under CAFA.**

24           Although CorePower denies the allegations in Plaintiff's Complaint and denies that the claims

25   alleged in Plaintiff's Complaint are appropriate for class treatment, jurisdiction is also proper under

26   CAFA.

27

28

1    In 2005, Congress enacted CAFA to give district courts original jurisdiction to hear class

2 actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

3 interest and costs," and "in which [, inter alia,] any member of a class of plaintiffs is a citizen of a

4 State different from any defendant." 28 U.S.C. § 1332(d).  Under 28 U.S.C. § 1332d(6), the claims of

5 the "individual class members shall be aggregated to determine whether the matter in controversy

6 exceeds the sum or value of $5,000,000, exclusive of interest and costs."  Indeed, CAFA was signed

7 into law for the express purpose of significantly expanding the jurisdiction of the federal courts over

8 class-actions with "interstate ramifications," such as Plaintiff's suit here—against a Colorado L.L.C.,

9 alleging violations of California labor law with respect to the defendant's California employees.

10    While CorePower denies Plaintiff's claims in their entirety and asserts that Plaintiff's claims

11 are not amenable to class treatment, the amount in controversy in this matter clearly exceeds

12 $5,000,000.  In this case, Plaintiff does not even assert or allege that the amount in controversy is less

13 than $5,000,000.  Indeed, in this case, Plaintiff has not disputed that the alleged class-wide damages

14 are more than $5,000,000.  As such, Plaintiff's motion fails on its face.

15    CorePower provides the following analysis of potential damages (without admitting liability)

16 in order to demonstrate that Plaintiff's Complaint puts a sufficient amount "in controversy" to warrant

17 removal under 28 U.S.C. § 1332(d).  As Plaintiff acknowledges, there are potentially 500 class

18 members during the alleged class period.  P's Mot. at 8.  Multiplying $46,175.50 (the amount in

19 controversy for Plaintiff's individual, allegedly representative claims using Plaintiff's assumptions)

20 by 500 potential class members well exceeds the $5,000,000 jurisdictional requirement.  Indeed, an

21 amount in controversy in excess of $5,000,000 is met even with assumptions far less than those

22 asserted by Plaintiff.  Even assuming the amount in controversy of a single class member is $20,000—

23 less than half of the alleged amount Plaintiff's individual claim, using Plaintiff's assumptions—a class

24 of 300 members (a very conservative estimate), will result in an amount in controversy in excess of

25 $5,000,000.  Accordingly, the amount in controversy for Plaintiff's claims (on a class-wide basis)

26 asserted in this action, conservatively estimated, is well over the $5,000,000 jurisdictional threshold.

27

28

8

**III.    CONCLUSION**

Remand is improper because the Court has original jurisdiction in this case.  Plaintiff concedes there is complete diversity between the parties and, as established above, the amount in controversy as a result of Plaintiff's Complaint is well over $75,000.  Alternatively, jurisdiction is also proper under CAFA because the amount in controversy exceeds $5,000,000—a fact which has not been disputed by Plaintiff.  Whether under traditional or traditional diversity jurisdiction, the amount in controversy threshold is met.  This case is properly before this court and Plaintiff's motion should be denied.

Respectfully submitted,

Dated:  February 11, 2013                  By:    */s/ Rory D. Zamansky*
                                                  Rory Zamansky (*pro hac vice*)
                                                  ZELLE HOFMANN VOELBEL &
                                                  MASON LLP
                                                  500 Washington Avenue South, Suite 4000
                                                  Minneapolis, MN 55415
                                                  Telephone:  (612) 339-2020
                                                  rzamansky@zelle.com

                                                  Craig C. Corbitt (SBN 83251)
                                                  ZELLE HOFMANN VOELBEL &
                                                  MASON LLP
                                                  44 Montgomery Street, Suite 3400
                                                  San Francisco, California  94104
                                                  Telephone:  (415) 693-0700
                                                  ccorbitt@zelle.com

                                                  *Counsel for Defendant CorePower Yoga
                                                  LLC*

9

. **CERTIFICATE OF SERVICE**

*Walker et al. v. CorePower Yoga LLC*
**USDC, Southern District of California**
**Case No.: 3:12cv00004 WQH DHB**

The undersigned hereby certifies that a true and correct copy of the preceding document is being served on February 11, 2013, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record and parties not represented by counsel will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Rory D. Zamansky*

Rory D. Zamansky
rzamansky@zelle.com

3242622v2

10

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND –
Case No. 3:12-cv-00004 WQH (DHB)