FILED

13 MAY 28 AM 8:25

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILLIAN WALKER, an individual, on behalf of herself and all others similarly situated, all other aggrieved employees, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>COREPOWER YOGA, LLC, a Colorado Corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 12cv4-WQH-DHB<br><br>ORDER |

HAYES, Judge:

The Matter before the Court is the Motion to Remand filed by Plaintiff Gillian Walker. (ECF No. 25).

## I. Background

On November 14, 2011, Plaintiff filed a Class Action Complaint for Damages, Restitution, Injunctive Relief, Civil Penalties, and Disgorgement of Profits ("Complaint") against Defendant CorePower Yoga, LLC in San Diego County Superior Court. (ECF No. 1-2). The Complaint alleges Plaintiff was employed by Defendant as a yoga instructor from May 2010 through May 2011. The Complaint asserts seven causes of action as a purported class action on behalf of all individuals who worked for Defendant as yoga instructors from four years prior to the filing of the Complaint up to the time of trial. Six of the seven purported class action claims assert violations of

the California Labor Code, and the seventh asserts unlawful and unfair business practices pursuant to California Business and Professions Code § 17200. The eighth cause of action seeks statutory penalties pursuant to the California Labor Code Private Attorneys General Act ("PAGA") on behalf of Plaintiff and all other aggrieved employees. The ninth and final cause of action seeks damages for wrongful discharge in violation of public policy. The Complaint does not allege a specific amount of damages sought.

On January 3, 2012, Defendant removed the action to this Court, alleging diversity subject matter jurisdiction. (ECF No. 1). Defendant asserted that Plaintiff "more likely than not" seeks damages in excess of $75,000. *Id.* at 3.

On January 26, 2012, the Court issued an Order to Show Cause why this action should not be remanded for lack of subject matter jurisdiction. (ECF No. 7). On February 10, 2012, Defendant filed a response to the Order to Show Cause. (ECF No. 9). Defendant submitted evidence that complete diversity existed between the parties and stated, without evidence, that "reasonable estimates of the damages, penalties, fees and costs" that "Plaintiff seems to be seeking" show that the amount in controversy for Plaintiff's individual claim is in excess of $75,000. *Id.* at 6, 11.

On January 14, 2013, Plaintiff filed the Motion to Remand, contending that Defendant failed to meet its burden of showing that the amount in controversy requirement for diversity jurisdiction has been met. (ECF No. 25). Plaintiff contends:

> Defendant improperly includes various elements in its amount in controversy calculation. For example, Defendant inappropriately includes PAGA and other penalties for the entirety of Plaintiff's employment, even though the limitations period only allows for penalties during half of her employment with Defendant. Defendant also improperly aggregates the penalties to be paid to the California Labor and Workforce Development Agency ('LWDA') and the penalties to be paid to Plaintiff pursuant to the ... PAGA, 75 percent of which are to be paid to the LWDA and only 25 percent to the aggrieved employees. The amount in controversy calculation should exclude the 75 percent payment to the LWDA.
>
> Defendant further inappropriately includes 'estimated' attorneys' fees through trial, as opposed to fees as of the date of notice of removal to calculate the amount in controversy. Further, Defendant's estimate of attorneys' fees is speculative, conclusory, and lacks evidentiary support. Defendant has also apparently aggregated attorneys' fees for all similarly

> situated and aggrieved employees in its attempt to exceed the amount in controversy threshold. The applicable case law, however, requires that attorneys' fees be distributed evenly across the class members and aggrieved employees, and that each employee independently meet the amount in controversy requirement.

*Id.* at 2. Plaintiff contends that, "even assuming [Defendant's] assumptions [in the Response to the Order to Show Cause] are accurate," if "these improperly-included elements are subtracted from Defendant's calculation of the amount in controversy," the amount in controversy with respect to Plaintiff's claims would be $46,275.50.

On February 11, 2013, Defendant filed an opposition to the Motion to Remand. (ECF No. 29). Defendant contends:

> Plaintiff completely ignores the common interest exception that exists in the ... PAGA class actions, which holds that because all purported class members have a common interest in their PAGA claims that all of their collective alleged damages under PAGA are supposed to be aggregated in determining whether the $75,000 amount in controversy has been met. Therefore, even if we are to assume that all of the Plaintiff's calculations are correct, and completely exclude attorneys' fees from this calculation, the $75,000 amount in controversy is still met. However, Plaintiff is also wrong on the attorneys' fees issue. The law is clear that when members of a purported class share a common interest the current and future attorneys' fees incurred on their behalf are to be included in determining the amount in controversy and are not supposed to be attributed pro rata to each class member.
>
> Alternatively, jurisdiction is also proper under the Class Action Fairness Act of 2005 ('CAFA') because the amount in controversy in this litigation exceeds $5,000,000. Indeed, nowhere in Plaintiff's motion to remand does Plaintiff assert that the amount in controversy is less than $5 million. Plaintiff's motion should therefore be denied.

*Id.* at 2. Defendant submitted a declaration from its attorney stating that, "[t]o date, [Defendant] has already paid more than $50,000 in attorneys' fees defending this action." (ECF No. 29-1 at 2).

On February 15, 2013, Plaintiff filed a reply in support of the Motion to Remand. (ECF No. 31). Plaintiff contends:

> First, Defendant's amount in controversy calculation continues to improperly aggregate the penalties paid to the ... LWDA with the penalties to be paid to Plaintiff pursuant to PAGA. Further, Defendant also improperly aggregates PAGA penalties attributable to all other aggrieved employees in its amount in controversy calculation. These improper inclusions contravene the anti-aggregation rule and applicable case law, as only the Plaintiff's claims (including only her 25% share of PAGA penalties) should be considered in calculating the amount in

controversy.

Second, Defendant submits absolutely no additional evidence to support its amount in controversy calculations. Thus, Defendant's calculations continue to be speculative, lack evidentiary support, and be conclusory, at best. In short, Defendant has failed to submit any 'summary judgment type' evidence whatsoever in support of its calculations.

Third, Defendant continues to improperly include attorneys' fees beyond the date of removal in its calculation and fails to realize that, even if such an amount is proper (which it is not), attorneys' fees must be allocated pro-rata to each and every class member and aggrieved employee. As shown herein, even if attorneys' fees are included in the calculation (which they should not be), they must be allocated pro-rata to all class members and/or aggrieved employees.

Lastly, Defendant raises CAFA jurisdiction for the first time but has failed to meet its heavy burden to establish that the $5,000,000 amount in controversy requirement is satisfied. Specifically, Defendant's calculations are entirely unsupported by any evidence whatsoever and, rather, consist only of assumption upon assumption.

*Id.* at 2.

On March 1, 2013, Defendant filed a sur-reply in opposition to the Motion to Remand. (ECF No. 37). Defendant attached evidence indicating that, from November 2007 to June 2012, 487 individuals worked for Defendant as yoga instructors. Defendant attached a settlement letter dated April 17, 2012 sent by Plaintiff's counsel to Defendant's counsel which stated that, "utiliz[ing] the analysis delineated by your client in its response to the Court's OSC re: subject matter jurisdiction to determine potential exposure," "our analysis shows [Defendant]'s *possible total exposure* in this matter to be approximately *$25,570,375* (or more)." (ECF No. 37 at 27, 29).

On March 20, 2013, Plaintiff filed a sur-response in support of the Motion to Remand. (ECF No. 43). Plaintiff contends that the list of yoga instructors employed by Defendant from November 2007 to June 2012 "does not support Defendant's calculations because it contains no dates of employment and does not indicate whether the class members were employed during the time period that would allow them to collect PAGA or other penalties (statute of limitations for penalties [is] only one year)...." *Id.* at 6. Plaintiff contends that the settlement letter attached to Defendant's sur-reply "was calculated using nothing but unsupported and inflated assumptions

because at the time Plaintiff had not yet received initial disclosures or any discovery from Defendant." (ECF No. 43 at 9).

## II. Analysis

### A. Standard of Review

A defendant may remove a civil action from state court to federal court pursuant to the general removal statute, based on either federal question or diversity jurisdiction. *See* 28 U.S.C. § 1441. Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity of citizenship and an amount in controversy in excess of $75,000. *See* 28 U.S.C. § 1332(a)(1). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (citing, *inter alia*, 28 U.S.C. § 1441(a)); *see also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (holding that, in cases where jurisdiction is alleged under the Class Action Fairness Act and the complaint does not specify an amount in controversy, the removing party must prove the jurisdictional amount by a preponderance of the evidence) (per curiam). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (citation omitted). In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Abrego Abrego*, 443 F.3d at 690 (quotation omitted). A court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airline, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citation omitted). The presumption against removal means that "the defendant always has the burden of establishing that removal is

proper." *Id.*

## C. 28 U.S.C. § 1332(a)

The sole issue raised by the Motion to Remand is whether the amount in controversy requirement is met. In order for the Court to exercise diversity jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332(a), Defendant must establish that "the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs...." 28 U.S.C. § 1332(a). "[I]f a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001). Accordingly, the Court considers whether Defendant has established by a preponderance of the evidence that Plaintiff's claims have an amount in controversy in excess of $75,000.

In the Response to the Order to Show Cause, Defendant contends that a reasonable estimate of the amount in controversy with respect to all of Plaintiff's claims, excluding statutory damages and penalties and attorneys' fees, is $38,770.[1] (ECF No. 9 at 6-7, 9-11). Plaintiff does not challenge this estimate, and the Court will accept it for the purposes of deciding the Motion to Remand. The parties dispute the amounts to be attributed to Plaintiff's claims for statutory damages and penalties and attorneys' fees when calculating the amount in controversy.

### 1. Statutory Damages and Penalties

In the Response to the Order to Show Cause, Defendant contends that the amount in controversy attributable to Plaintiff's claims for statutory damages and penalties is $49,718. *See id.* at 7-9. Plaintiff contends that this amount is improperly

---

[1] Defendant estimates the following amounts for all claims, excluding statutory damages and penalties and attorneys' fees: $17,220 for failure to pay for all hours worked, *see* ECF No. 9 at 6-7; $1,724 for failure to reimburse business expenses, *see id.* at 7; $7,413 for wrongful termination, *see id.* at 9-10; $5,000 for unlawful and unfair business practices, *see id.* at 10; and $7,413 for punitive damages, *see id.* at 10-11.

inflated because Defendant fails to account for the one-year statute-of-limitations period for statutory penalties under California law, and Defendant fails to subtract the 75 percent share of any PAGA penalties recovered which is distributed to the LWDA.

Defendant does not contest that a one-year limitations period governs Plaintiff's claims for statutory penalties, such as the PAGA penalties and the Labor Code § 226(e) penalty. *See* Cal. Code Civ. Proc. § 340(a) (providing a one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation"). Because the Complaint was filed on November 14, 2011 and Plaintiff was only employed with Defendant through May 2011, Plaintiff can only recover PAGA and § 226(e) penalties for a maximum of six months (from November 2011 through May 2011), rather than the one-year period asserted by Defendant in the Response to the Order to Show Cause. For this reason, the amount in controversy Defendant attributes to statutory penalties must be reduced by approximately half.

The parties dispute whether the total PAGA recovery should be considered in determining the amount in controversy. PAGA provides that 75 percent of the recovery must go to the LWDA, leaving 25 percent for "aggrieved employees." Cal. Lab. Code § 2699(i) ("[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and 25 percent to the aggrieved employees."). As a general rule, aggregated claims of multiple claimants cannot form the basis of the amount in controversy. *See Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 943 (9th Cir. 2001). "The Court in *Troy Bank* ... recognized an exception to the anti-aggregation rule that was nearly as old as the rule itself. '[W]hen several plaintiffs unite to enforce a single title or right, in which they have a common

and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.'" *Gibson*, 261 F.3d at 943 (quoting *Troy Bank*, 222 U.S. at 41). In *Troy Bank*, the Supreme Court held that the two plaintiffs could aggregate their claims based on a vendor's lien that they owned jointly. *See Troy Bank*, 222 U.S. at 41. In *Gibson*, the Court of Appeals for the Ninth Circuit held that class members could not aggregate their claims for disgorgement (despite the creation of a "common fund") and punitive damages related to the method in which an automobile manufacturer painted vehicles. *Gibson*, 261 F.3d at 945-47.

The Court of Appeals for the Ninth Circuit has yet to rule on whether the total PAGA recovery or only the 25 percent which is distributed to the aggrieved employees should be considered in determining the amount in controversy. District courts are split on the issue. *Compare Hernandez v. Towne Park, Ltd.*, No. CV12-02972, 2012 WL 2373372, at *16 (C.D. Cal. June 22, 2012) ("The [PAGA] statute ... permits either the LWDA or the aggrieved employees to act independently to enforce the Labor Code. This cuts against aggregating the agency's claims with the employees' claims, even if the employees' individual claims should be aggregated under the 'common and undivided interest' exception. Consequently, the court concludes that only 25% of the potential recovery on the representative action can be included in calculating the amount in controversy on the PAGA claim."), *and Pulera v. F & B, Inc.*, No. 2:08cv275, 2008 WL 3863489, at *4 (E.D. Cal. Aug.19, 2008) ("The amounts recoverable by Plaintiff based on her PAGA claims are separate and distinct from the amounts recoverable by the State of California via the LWDA, and therefore these amounts may not be aggregated"); *with Urbino v. Orkin Servs. of Cal.*, 882 F. Supp. 2d 1152, 1164 (C.D. Cal. 2011) ("This Court agrees with the *Thomas* court and finds that the amount in controversy in a PAGA claim is predicated on the total amount of civil penalties sought by the aggrieved employees"), *and Thomas v. Aetna Health of Cal., Inc.*, No. 1:10cv1906, 2011 WL 2173715, at *19 (E.D. Cal. June 2, 2011) ("[A] PAGA claim is common and undivided because the right to pursue the action derives

solely from the LWDA's interest in enforcement of the Labor Code.... [T]he amount at stake in a PAGA claim is predicated on the total amount of the penalties that can be sought by the aggrieved employees as the proxy of the LWDA."). The Court finds the reasoning of *Hernandez* and *Pulera* persuasive, and concludes that only 25 percent of the total potential PAGA recovery may be included in calculating the amount in controversy on the PAGA claims.

Defendant contends that, even subtracting the entire amount to be remitted to the LWDA, the amount in controversy exceeds $75,000 because the PAGA recovery of all aggrieved employees should be aggregated,[2] and there are 400 or more aggrieved employees. In estimating the number of aggrieved employees pursuant to the PAGA, Defendant relies upon the allegation in the Complaint that there were over 400 individuals employed by Defendant as yoga instructors during the four-year class period and the evidence submitted by Defendant that, from November 2007 to June 2012, 487 individuals worked for Defendant as yoga instructors. (ECF No. 1-2 at 11, 21; ECF No. 37 at 3). The Complaint does not allege how many yoga instructors were employed by Defendant during the one-year PAGA limitations period, and the evidence submitted by Defendant does not contain any information regarding dates of employment. Based upon the record, the Court would be required to speculate to an impermissible degree to arrive at a reasonable estimate of the number of "aggrieved employees" pursuant to the PAGA. Cal. Labor Code § 2699. Defendant has the burden of producing summary-judgment type evidence that the amount in controversy requirement is met, and Defendant presumably is in the best position to produce evidence of the employment dates of the yoga instructors Defendant employed. *See Hernandez*, 2012 WL 2373372, at *14 ("[Defendant] infers that each employee is entitled to claim a penalty for each pay period he or she worked. This assumption has no basis, either in the complaint's plain language or in any summary-judgment type

---

[2] The Court does not decide whether the PAGA recovery of all aggrieved employees should be aggregated for the purposes of determining the amount in controversy.

evidence.... [D]efendants rely on speculation in order to meet their evidentiary burden."); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1130 (C.D. Cal. 2010) ("[D]efendants are in the best position to adduce evidence regarding the working hours and wages of their tellers. In support of their notice of removal, defendants could have proffered evidence regarding [defendant]'s actual policies or practices. They could have conducted a sampling or other analysis demonstrating that it was more likely than not that many of their employees regularly worked more than eight hours in a day or forty hours in a week to support calculations regarding potential overtime claims. Adducing such evidence would not have required defendants to prove [plaintiff]'s case or answer the 'ultimate question' presented by the litigation. Defendants, however, failed proffer evidence supporting their calculations regarding the amount in controversy."); *cf. Lowdermilk*, 479 F.3d at 1002 (A court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture."). The Court finds that Defendant has failed to meet its burden of showing that the amount in controversy requirement is met by including the PAGA penalties recoverable by all aggrieved employees.

When only considering the PAGA penalties attributable to Plaintiff's individual claims, the most reasonable estimate of PAGA penalties offered by the parties is Plaintiff's estimate of $5,637.50.[3] (ECF No. 25-1 at 7; *see also* ECF No. 37 at 6). Adding this amount to the previously discussed estimate of $38,770 results in an estimated amount in controversy of $44,407.50, excluding attorneys' fees.

### 2. Attorneys' Fees

Where an underlying statute authorizes an award of attorneys' fees, such as in this case, "such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The Court of Appeals for the Ninth Circuit has not decided, and district courts "are split as to whether only attorneys' fees

---

[3] This estimate reflects the one-year statute of limitations period and deducts the 75 percent of PAGA penalties which is paid to the LWDA. (ECF No. 25-1 at 5-7).

that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case." *Hernandez*, 2012 WL 2373372, at *19 (collecting cases). The Court need not decide this issue because "attorneys' fees are not awarded solely to the named plaintiffs in a class action, and ... they therefore cannot be allocated solely to those plaintiffs for purposes of amount in controversy." *Gibson*, 261 F.3d at 942; *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) ("[W]e hold that attorneys' fees awarded under [California's Consumer Legal Remedies Act] must be divided among all members of the plaintiff class for purposes of amount in controversy."); *Zator v. Sprint/United Mgmt. Co.*, 09cv2577, 2011 WL 1168319, at *4 (S.D. Cal. Mar. 29, 2011) (holding that, in a PAGA action, attorneys' fees must be divided pro rata among all class members when determining the amount in controversy). Defendant has estimated attorneys' fees in the amount of $50,000 over the life of the case. (ECF No. 9 at 11; ECF No. 29 at 7). Defendant has produced evidence indicating that there are 487 class members. (ECF No. 37 at 3). Dividing the estimated $50,000 in attorneys' fees among the 487 class members results in only $104 in attorneys' fees being considered as part of the amount in controversy for Plaintiff's claims. Defendant has failed to meet its burden of showing that the $75,000 amount in controversy requirement is met by adding the estimated attorneys' fees to the $44,407.50 estimate discussed above.

### 3. Settlement Letter

Defendant contends that the April 17, 2012 settlement letter sent by Plaintiff's counsel establishes that the amount in controversy requirement is met. In the letter, Plaintiff's counsel stated that, "utiliz[ing] the analysis delineated by your client in its response to the Court's OSC re: subject matter jurisdiction to determine potential exposure," "our analysis shows [Defendant]'s *possible total exposure* in this matter to be approximately *$25,570,375* (or more)." (ECF No. 37 at 27, 29).

"A settlement letter is relevant evidence of the amount in controversy if it

appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citations omitted). In *Cohn*, the Court of Appeals for the Ninth Circuit stated that evidence of a settlement letter was sufficient to establish the $75,000 amount in controversy because plaintiff "could have argued that the demand was inflated and not an honest assessment of damages, but he made no attempt to disavow his letter or offer contrary evidence. Rather, he consistently maintained that his mark is worth more than $100,000." *Id.*

In this case, Plaintiff has expressly disavowed the letter by stating:

> The exposure figure ... was calculated using nothing but unsupported and inflated assumptions because at the time Plaintiff had not yet received initial disclosures or any discovery from Defendant. In fact, the ... letter itself states that it is predicated upon Defendant's analysis presented in its Response to Order to Show Cause (which was shown to be inaccurate and based upon assumptions in Plaintiff's Motion to Remand). [The letter] itself further states that 'our analysis on the value of the case has yet to be fully determined.' The purpose of the inflated exposure calculation was to prompt Defendant to provide more accurate calculations in response and to make the actual settlement demand appear more reasonable.... [T]he calculations regarding exposure therein are not reasonable....

(ECF No. 43 at 9). The Court finds that the settlement letter does not appear to reflect a reasonable estimate of Plaintiff's claim, and it is insufficient to establish that the $75,000 amount in controversy requirement is met. *Cf. Cohn*, 281 F.3d at 840.

### D. Class Action Fairness Act

CAFA gives district courts original jurisdiction to hear class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in which ... any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *See Abrego Abrego*, 443 F.3d at 685 ("We ... hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

In opposition to the Motion to Remand, Defendant contends for the first time that federal subject matter jurisdiction exists pursuant to CAFA. Defendant provides

no evidence to support its contention that the CAFA amount in controversy requirement is met. In its brief, Defendant states: "Multiplying $46,175.50 (the amount in controversy for Plaintiff's individual, allegedly representative claims using Plaintiff's assumptions) by 500 potential class members well exceeds the $5,000,000 jurisdictional requirement. Indeed, an amount in controversy in excess of $5,000,000 is met even with assumptions far less than those asserted by Plaintiff." (ECF No. 29 at 9).

Defendant provides no evidence or support for its assumption that each class member has the same or similar damages as Plaintiff. Defendant also fails to account for the one-year statute-of-limitations for PAGA and other penalties, which presumably would limit substantially the aggregated amount of penalties recoverable by the class. As discussed above, Defendant's speculation is particularly unreasonable in light of the fact that Defendant can reasonably be expected to have access to its own employment records and therefore could produce "summary-judgment-type evidence" sufficient to show the amount in controversy. *Abrego Abrego*, 443 F.3d at 690; *cf. Lowdermilk*, 479 F.3d at 1002 (A court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture."). The Court finds that Defendant has failed to satisfy its burden of showing by a preponderance of the evidence that the $5,000,000 amount in controversy requirement is met.

### III. Conclusion

IT IS HEREBY ORDERED that the Motion to Remand is GRANTED. (ECF No. 25). Pursuant to 28 U.S.C. § 1447(c), this action is REMANDED to San Diego County Superior Court, where it was originally filed and assigned case number 37-2011-00101074-CU-OE-CTL.

Dated: 5/24/13

WILLIAM Q. HAYES
UNITED STATES DISTRICT JUDGE